**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **JESSICA CASEY and JASON COLEMAN, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>          **Plaintiffs,**<br><br>**v.**<br><br>**RELIANCE TRUST COMPANY, a Georgia corporation,**<br><br>          **Defendant.** | **Case No. 4:18-cv-000424-ALM** |

**PLAINTIFFS' UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND...................................... 1

A.      Background ........................................................................................... 1

B.      Discovery .............................................................................................. 2

C.      Motion Practice ..................................................................................... 3

D.      The Parties' Settlement Efforts ............................................................ 3

III.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS ....................... 3

A.      Benefits to the Class.............................................................................. 3

B.      Notice and Administration..................................................................... 4

C.      Service Awards to the Class Representatives and Attorneys' Fees and Costs ....... 4

D.      Release of Claims .................................................................................. 4

E.      Notice and Proposed Schedule of Events ............................................. 5

IV.     ARGUMENT ................................................................................................. 6

A.      The Court Should Certify the Settlement Class .................................... 6

1.      The Class satisfies the requirements of Rule 23(a)..................... 6

a)      The Class is sufficiently numerous ................................. 7

b)      There are common questions of law and fact ................. 7

c)      The typicality requirement of Rule 23(a) is met ............ 8

d)      The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class................ 10

2.      The claims meet the requirements of certification under Rule 23(b)(1)... 11

a)      Class certification under Rule 23(b)(1)(A) is appropriate ........... 11

b)      Class certification under Rule 23(b)(1)(B) is appropriate ........... 12

B.      The Court Should Grant Preliminary Approval Of The Settlement Because It Is Fair, Reasonable And Adequate........................................................................ 13

1.      The standards for preliminary approval ................................... 13

2.      The class is adequately represented, the negotiations were arm's length, and there is no suggestion of collusion ......................................... 15

3.      The complexity, expense, and likely duration of the litigation ............... 15

4.      The stage of the proceedings and the amount of discovery completed .... 18

5.   The effectiveness of the proposed method of distributing relief to the Class .................................................................................................. 18

6.   The terms of the proposed award of attorneys' fees ................................. 19

7.   The proposal treats class members equitably relative to each other ......... 19

C.   The Court Should Approve the Notice Plan and Schedule A Fairness Hearing... 19

V.   CONCLUSION .................................................................................................. 20

Plaintiffs Jessica Casey and Jason Coleman, individually and as Class Representatives, hereby move for an order certifying a settlement class for settlement purposes, preliminarily approving a class action settlement agreement between Plaintiffs and Defendant Reliance Trust Company ("Reliance Trust"), approving notice to the Settlement Class, and setting a date for a fairness hearing.[1]

## I.      INTRODUCTION

Subject to the Court's approval, the Parties have settled this Employee Retirement Income Security Act, 29 U.S.C. § 1000, *et seq.,* ("ERISA") class action for a cash payment of $6,250,000.00. No portion of the settlement payment is a tax or penalty under ERISA or the Internal Revenue Code of 1986 as amended. Should the Court grant final approval, every eligible Class Member will receive their portion of the Net Settlement Fund according to a *pro rata* Plan of Allocation.

The proposed settlement ("Settlement") satisfies all of the criteria for preliminary approval and provides an excellent result for the Settlement Class. For these reasons, discussed in more detail below, Plaintiffs request that the Court grant this motion.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Background

This is a proposed class action brought on behalf of participants and beneficiaries of the RVNB Holdings, Inc. Employee Stock Ownership Plan ("Plan"). The Complaint alleges that Defendant and plan trustee, Reliance Trust, violated ERISA in connection with the purchase of 520,000 shares of RVNB Holdings, Inc. ("RVNB") stock by the Plan on December 17, 2012, for $85 million (the "ESOP Transaction").

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

Plaintiffs allege that Reliance Trust violated ERISA § 406, 29 U.S.C. § 1106, because it engaged in a prohibited transaction under ERISA by, *inter alia*, causing the Plan to purchase the shares of RVNB stock, causing the Plan to borrow money from RVNB for that purchase, acting for the benefit of RVNB and its shareholders who sold or redeemed their shares prior to the ESOP Transaction by approving a purchase price for RVNB stock that exceeded its fair market value, and receiving payment from RVNB for serving as trustee on behalf of the Plan.

Reliance Trust denies these allegations, denies any wrongdoing or liability, and has vigorously defended itself in this Action. Reliance Trust does not admit wrongdoing of any kind regarding the ESOP Transaction or this Action.

**B.    Discovery**

The Parties have vigorously prosecuted this Action and have engaged in robust discovery. Plaintiffs' Counsel has conducted extensive discovery regarding the facts and claims in this Action, including culling and reviewing relevant documents from the voluminous document production by Defendant. They prepared for, took, and defended thirteen (13) depositions. Plaintiffs took the depositions of Nick Bouras, Vauna Peterson, Bucky Wright, Matthew Hricko, Steve Martin, Spero Georgedakis, and experts Jeffrey Tarbell and Colin Henderson. Plaintiffs' Counsel defended the depositions of Jason Coleman, Jessica Casey, and experts Daniel Van Vleet, Ronald Milewski, and Charles Goldman. All of these depositions were attended by Reliance Trust's counsel, who also examined some of those witnesses. Reliance Trust took the depositions of the Named Plaintiffs and other non-party witnesses. Plaintiffs' Counsel has worked with expert consultants, coordinated the preparation of expert reports, analyzed Defendant's expert reports, and prepared for and defended expert depositions. They also prepared pre-trial submissions, motions *in limine*, and were preparing for trial before a settlement in principle was agreed to.

C.      **Motion Practice**

The Parties engaged in extensive motion practice that included the following: Reliance Trust's Motion to Change Venue, ECF # 13; Reliance Trust's Motion to Compel Arbitration, ECF # 44; Plaintiffs' Motion for Class Certification, ECF # 50; Motions *in Limine* to Exclude Expert Testimony, ECF ## 116, 119, 120, 121; Defendant's Motion for Partial Summary Judgment, ECF # 140; and Plaintiffs' Motion for Partial Summary Judgment, ECF # 143.

D.      **The Parties' Settlement Efforts**

The Parties mediated this matter with Robert A. Meyer, Esq. of JAMS. The Parties drafted and submitted comprehensive mediation statements to Mr. Meyer that focused all sides on the key issues. Counsel for the Parties attended a full day mediation in New York, New York on January 8, 2019. The attendees vigorously engaged in the mediation process, during which all attendees' counsel made presentations to Mr. Meyer. After much deliberation, discussion, and compromise, Mr. Meyer made a mediator's proposal in the amount of $6.25 million, which the Parties accepted. Declaration of Gregory Y. Porter ("Porter Decl.") ¶ 17.

### III.      SUMMARY OF THE PROPOSED SETTLEMENT TERMS

The material terms of the Settlement Agreement are summarized below. The proposed Settlement Class is defined as: all persons who were participants in RVNB Holdings, Inc. Employee Stock Ownership Plan at any time and who vested in RVNB Holdings, Inc. stock. Excluded from the Settlement Class are Robert Peterson, Jr., Vasilia Peterson, Paul Generale, Mike Paxton, and Nick Bouras. Settlement Agmt., ¶ 1.38.

A.      **Benefits to the Class**

Reliance has agreed to pay $6.25 million ("Settlement Amount") into the Settlement Fund. *Id*., ¶ 7.1.2. The funds remaining after deduction from the Settlement Amount for (i) taxes (or reserves to pay taxes), (ii) settlement administration fees, (iii) Court-approved attorneys' fees

or expenses, and (iv) any Service Awards to the Class Representatives, shall constitute the "Net Settlement Fund." The Net Settlement Fund will be distributed to the Class Members pursuant to the Plan of Allocation.

**B.      Notice and Administration**

The Settlement Administrator, KCC LLC shall be responsible for disseminating Class Notice, establishing a website for case documents, and establishing an interactive voice response system to respond to inquiries. The Settlement Administrator shall also implement the Plan of Allocation and make payments to former participants in the Plan.

KCC LLC shall also serve as Escrow Agent, and shall be responsible for establishing and maintaining a qualified settlement trust to hold the Settlement Amount and Net Settlement Fund. The Escrow Agent shall invest the assets of the qualified settlement trust pursuant to the agreement with KCC LLC and Plaintiffs' Counsel.

**C.      Service Awards to the Class Representatives and Attorneys' Fees and Costs**

Subject to Court approval, Class Counsel's fees, costs and expenses, and Service Awards to the Class Representatives shall be paid from the Settlement Amount. Settlement Agmt., ¶¶ 8.2, 10.1, 10.3. Plaintiffs shall petition the Court for Service Awards not to exceed $25,000 for each Class Representative in recognition of their service to the Class. *Id.*, ¶ 10.3. Class Counsel will also petition the Court for an award of attorneys' fees in an amount not exceeding one-third of the Class Settlement Amount, and for reimbursement of litigation expenses. *Id.*, ¶ 10.1.

**D.      Release of Claims**

In exchange for payment of the Settlement Amount by Reliance Trust and satisfaction of the conditions required by the Settlement Agreement, Plaintiffs, the Settlement Class and the

Plan[2] will release any claims that pertain to the RVNB ESOP's investment in RVNB stock based on factual allegations up to the date of executing of the Agreement, and claims that arise out of the allegations contained in the Complaint, including claims for breach of fiduciary duty. The Released Parties, Released Claims and the covenant not to sue are set forth in full in the Settlement Agreement. *Id.*, ¶¶ 3.1, 3.2, 4.1.

**E.    Notice and Proposed Schedule of Events**

The Settlement Agreement provides that Plaintiffs' Counsel will provide the names, last known addresses of members of the Settlement Class, and number of vested shares of RVNB stock that were allocated to their ESOP accounts. *Id.*, ¶ 2.1.2.

The proposed Class Notice, Settlement Agmt. Ex. 1, provides all the information necessary to inform Class Members about the nature of the Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. In addition, key court documents, including the Complaint, the Settlement Agreement, preliminary approval papers, Plaintiffs' Motion for Award of Attorneys' Fees, and Plaintiffs' Motion for Final Approval will be posted on the settlement website. The Class Notice will be mailed by First Class mail. Class Counsel anticipate that Class Members' mailing information will be largely accurate, because many Class Members were recently employed by RVNB and in 2019, RVNB completed final distributions to Plan participants in connection with terminating the Plan. For returned mail, the Settlement Administrator will engage in standardized processes to identify and locate Class Members. The proposed schedule is set forth below:

---

[2] Under the Settlement Agreement, the Plan's release will be provided by an Independent Fiduciary. Because the Plan was terminated in 2017, the Parties are requesting the Court to appoint Fiduciary Counselors Inc. as the Independent Fiduciary to review the Settlement Agreement and its terms and, if appropriate, to approve it on behalf of the Plan. The Independent Fiduciary's fees will be paid by Reliance Trust.

| Event | Timing |
|---|---|
| CAFA Notice | Within 10 days after the Settlement Agreement is filed |
| Preliminary Approval Hearing | TBD |
| Settlement Administrator to receive Class list and Class contact information | At least twenty-one (21) days prior to the deadline for mailing notice |
| Mail Settlement Notice | At least ninety (90) days before the Fairness Hearing |
| Motion for award of attorneys' fees and expenses, service awards for Named Plaintiffs | No later than forty-five (45) days before the Fairness Hearing |
| Objections to the Settlement, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before thirty (30) days before the Fairness Hearing |
| Motion for final approval of settlement | No later than fifteen days before the Fairness Hearing |
| Fairness Hearing | TBD |

## IV.    ARGUMENT

### A.    The Court Should Certify the Settlement Class

As part of the Settlement, the Parties request that the Court certify the proposed Settlement Class, defined in Section III above, for purposes of settlement only.

Certification of a class is required where the plaintiff demonstrates the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. As in other ERISA class actions, those requirements are easily met here.

### 1.    The Class satisfies the requirements of Rule 23(a)

Rule 23(a) provides that a class must satisfy four preconditions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims and defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### a)      The Class is sufficiently numerous

As to numerosity, the Fifth Circuit has held that "though the number of class members alone is not determinative of whether joinder is impracticable, a class consisting of 100 to 150 members is within the 'range that generally satisfies the numerosity requirement.'" *Bywaters v. United States*, 196 F.R.D. 458, 465 (E.D. Tex. 2000), citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.1999) *See Zeidman v. J. Ray McDermott & Co*., 651 F.2d 1030, 1038 (5th Cir. 1981) (noting that courts have certified classes with as few as twenty-five or thirty members). The Plan's Form 5500 for 2017 indicates that at the end of 2017, the Plan had approximately 1,175 participants. Porter Decl., Ex. B. Accordingly, numerosity is easily satisfied.

### b)      There are common questions of law and fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Fifth Circuit has held that the test for commonality "is not demanding" and is established where "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Bywaters*, 196 F.R.D. at 466-467, citing *Mullen*, 186 F.3d at 625; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Commonality exists if the plaintiffs' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350.

Claims that a stock was improperly valued or sold at an incorrect price, such as those at issue here, satisfy the commonality requirement. *Ludlow v. BP, P.L.C.,* 800 F.3d 674, 684 (5th Cir. 2015) (commonality exists in case alleging stock price was affected by company

misrepresentations); *Kindle v. Dejana*, 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (common issues exist where plaintiff alleged ESOP stock sold for less than fair market value).

Commonality is also satisfied here because Defendant's alleged violations of ERISA are the same for all Class Members. Defendant either did or did not engage in prohibited transactions under ERISA. Thus, Defendant's actions and inaction with respect to the ESOP Transaction either resulted in, or did not result in, ERISA violations toward the whole class.

Thus common issues in this case include: whether Reliance Trust engaged in prohibited transactions under ERISA by permitting the Plan to purchase RVNB stock and take a loan from RVNB; whether Reliance Trust took sufficient steps to determine the value of the RVNB stock in connection with the ESOP Transaction; whether Reliance Trust caused the Plan to pay more than fair market value for RVNB stock; whether Reliance Trust engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction; and other questions contained in the motion for class certification. ECF # 50.

### c)     The typicality requirement of Rule 23(a) is met

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality requires that "'the class representative's claims have the same essential characteristics of those of the putative class.'" *Cleven v. Mid-America Apartment Communities, Inc.*, 328 F.R.D. 452, 460 (W.D. Tex. 2018), quoting *Villagran v. Cent. Ford, Inc.*, 524 F. Supp. 2d 866, 883 (S.D. Tex. 2007) and *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001). Where "'claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *Villagran*, 524 F. Supp. 2d at 883 (*quoting James*, 254 F.3d at 571).

By definition, a prohibited transaction claim brought under ERISA §§ 409(a), 502(a)(2) is brought on behalf of the plan and any recovery must be paid "to such plan." 29 U.S.C. §§ 1109(a), 1132(a)(2). Thus, courts generally find that ERISA cases arising under § 502(a)(2) meet the typicality requirement because "the named plaintiffs assert that they, like the other members of the Settlement Class, suffered an economic loss arising out of Defendants' alleged ERISA violations. Their interests are aligned with the Settlement Class members." *Ramirez v. J.C. Penney Corp., Inc.*, No. 6:14-cv-601, 2017 WL 6462355, at *2 (E.D. Tex. Nov. 30, 2017), 2017 WL 6462355, adopting Report and Recommendation, (approving ERISA settlement involving ESOP); *see also Lively v. Dynegy, Inc.*, No. 05-00063, 2007 WL 685861, at *10 (S.D. Ill. Mar. 2, 2007) (because action is brought "on behalf of the Plan," plaintiff's claims are typical of the claims of class members).

Here, the Plaintiffs were participants in the ESOP during the relevant time period. The Plan's primary asset was the RVNB stock it purchased during the relevant time period. In *Neil v. Zell*, an ERISA case arising from ESOP transactions, the court held that the named plaintiffs satisfied the typicality requirement because they "held the same investment as did all other members of the … ESOP"—employer stock. 275 F.R.D. 256, 261 (N.D. Ill. 2011); *Ramirez*, 2017 WL 6462355 (plaintiffs were typical because they suffered the same economic loss as a result of the transaction); *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 510 (W.D. Wis. 2011) (certifying class in ERISA case involving ESOP, finding named plaintiffs satisfied typicality); *Hill v. Hill Bros. Constr. Co., Inc.*, C.A. No.: 3:14-CV-213-SA-RP 2018 WL 280536, at *5 (N.D. Miss. Jan. 3, 2018) (approving settlement of ERISA case involving ESOP and certifying class for settlement purposes).

In addition, the damages sought here are losses and other relief on behalf of the Plan as a whole. Typicality is met.

> **d)** **The proposed Class Representatives and their counsel will fairly and adequately protect the interests of the Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The purpose of the "adequacy" requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The Fifth Circuit has held that this inquiry requires the court to consider: "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Stirman v. Exxon Corp*., 280 F.3d 554, 563 (5th Cir. 2002), citing *Berger v. Compaq Computer Corp*., 257 F.3d 475, 479 (5th Cir.2001), and *Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470, 484 (5th Cir. 1982). All of these requirements are met here.

Proposed Class Representatives Casey and Coleman have been actively engaged in the litigation, and they have provided documents to counsel used to draft the Complaint. They sat for depositions and have regularly conferred with counsel on the progress of the case, including settlement. They have no conflicts. The Named Plaintiffs assert claims on the Plan's behalf and request no individual relief. Therefore, the adequacy requirement of Rule 23(a)(4) is met.

Plaintiffs' Counsel in this case are well-qualified and experienced as described in detail in the Declaration of Gregory Porter. Porter Decl. ¶¶ 7-13. Not only do these attorneys have extensive experience litigating class actions, including numerous ESOP cases, they have worked diligently to litigate the claims here. *Id*., ¶ 16**.** There should be no question that counsel have

brought sufficient skill and resources to litigate this case. Thus, Plaintiffs' Counsel satisfy Rule 23(a)(4) and 23(g).

### 2. The claims meet the requirements of certification under Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), claims must meet at least one of the three provisions of Rule 23(b). The claims meet the requirement of Rule 23(b)(1).

"Most ERISA class actions are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). "[T]he unique and representative nature of an ERISA § 502(a)(2) suit" makes such claims particularly appropriate. *Stanford v. Foamex L.P.*, 263 F.R.D. 156 (E.D. Pa. 2009); *Ramirez*, 2017 WL 6462355, at *3 ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held."), *citing In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3rd Cir. 2009). ERISA actions meet the requirements of Rule 23(b)(1) because "defendants often provide 'unitary treatment to all members of [a] putative class' and "the rights of absent 'class member[s] [are often] … implicated by litigation brought by other class members.'" *Feret v. Corestates Fin. Corp.*, C.A. No. 97–6759, 1998 WL 512933, at *13 (E.D. Pa. Aug. 18, 1998).

### a) Class certification under Rule 23(b)(1)(A) is appropriate

Rule 23(b)(1)(A) provides that a class may be certified if prosecuting separate actions would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for the party opposing the class. "ERISA requires plan administrators to treat all similarly situated participants in a consistent manner." *Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (citations omitted). For this reason, courts have certified cases involving violations of ERISA under Rule 23(b)(1)(A). *See Neil*, 275 F.R.D. at 267-68; *Knight v. Lavine*, No. 12-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013).

The risk of inconsistent adjudications is apparent in this case. For example, two central issues in this case are whether the Plan acquired RVNB stock at an appropriate value, and what steps that Reliance Trust and its advisors undertook to determine that value. Separate lawsuits over these issues could result in different outcomes. Inconsistent adjudications of the true fair market value of RVNB stock at the time of the ESOP's stock purchase obtained by similarly-situated participants would make it impossible for the Plan administrator to treat similarly-situated participants alike. Accordingly, certification under Rule 23(b)(1)(A) is appropriate.

### b)      Class certification under Rule 23(b)(1)(B) is appropriate

Certification under Rule 23(b)(1)(B) is appropriate where "*any* individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (emphasis added). One example of an action ideally suited for certification under Rule 23(b)(1) is "the adjudication of the rights of all participants in a fund in which the participants have common rights." *Id*. at 834 n.14. Rule 23(b)(1)(B) is designed for "an action which charges a breach of trust by a[ ] ... trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment. That precisely describes the claims here.

Claims involving a fiduciary's breach of ERISA's prohibited transaction rules must be brought in a representative capacity on behalf of the plan under § 502(a)(2) for § 409 relief. 29 U.S.C. §§ 1109, 1132(a)(2); *Schering Plough Corp.*, 589 F.3d at 594-95. Thus, courts recognize that ERISA cases are the classic examples of Rule 23(b)(1)(B) class actions. *See*, *e.g., Neil*, 275 F.R.D. at 267-68; *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D. Va. 2006). This is

particularly true for cases involving an ESOP. *See*, *e.g.*, *In re Ikon Office Solutions, Inc.,* 191 F.R.D. 457, 466-67 (E.D. Pa. 2000) (certifying 23(b)(1) class).

The key issues in the case thus focus on Defendant's conduct—principally, whether and how it caused the complained of prohibited transactions, the adequacy of its investigation into the value of RVNB stock, the information used in its valuations, and the conclusions drawn from that information. Thus, a judgment that Reliance Trust breached ERISA would apply to the Plan as a whole and impact all class members equally. Further, any money recovered will be paid to the Plan, meaning that resolution of these issues will affect *all* participants in the Plan.

**B.**     **The Court Should Grant Preliminary Approval Of The Settlement Because It Is Fair, Reasonable And Adequate**

  **1.**     **The standards for preliminary approval**

Rule 23(e) provides that a class action cannot be settled without court approval and notice to the class. At preliminary approval, the court must determine whether the settlement justifies giving notice of the settlement to the class. Rule 23(e)(1).

Rule 23, as amended in 2018, provides specific direction to federal courts considering whether to grant preliminary approval of a class action settlement and approve the issuance of notice. Fed. R. Civ. P. 23(e), Committee Notes. The court must be satisfied that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). *See Ward v. Flagship Credit Acceptance LLC*, No. 17-2069, 2020 WL 759389, at *4 (E.D. Pa. Feb. 13, 2020); *see also ODonnell v. Harris County, Texas,* No. H-16-1414, 2019 WL 4224040, at *7 (S.D. Tex. Sept. 5, 2019).

Therefore, although the factors cited in Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information

currently before the Court." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Those factors are as follows:

> (A) the class representatives and counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). *Cf. ODonnell*, 2019 WL 4224040 at *8 (citing Fed. R. Civ. P. 23(e)); *accord Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019).

Prior to the 2018 amendments, the Fifth Circuit traditionally evaluated class action settlements using the six factors outlined in *Reed v. Gen. Motors Corp.*, (the *Reed* factors):

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citation omitted); *see also Jones v. Singing River Health Servs. Found.,* 865 F.3d 285, 293 (5th Cir. 2017).

Plaintiffs will address each of these factors to the extent they are applicable, many of which overlap.[3]

Ultimately, to approve the proposed settlement the court must determine that it is fair, reasonable and adequate. *See Jones*, 865 F.3d at 293.

### 2. The class is adequately represented, the negotiations were arm's length, and there is no suggestion of collusion

Rule 23(e)(2)(A), requiring adequate representation by the Plaintiffs and their counsel is addressed in Section IV(A)(1)(d) above. In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were at arm's length, extensive and hard fought, with the assistance of a professional, experienced class action mediator. *See* Section II(D) above; Porter Decl. ¶ 17. Similarly, the arm's length nature of the negotiations, and the vigorous litigation of the Action, establish a lack of collusion, the first *Reed* factor. *ODonnell*, 2019 WL 4224040, at *9. As the court observed in *ODonnell*, like here, there is no suggestion of fraud or collusion in this case, where "[t]he proposed class settlement was the product of rigorous, hard-fought negotiations conducted at arm's-length." *Id*. In such cases, the court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Id*., *citing Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018).

### 3. The complexity, expense, and likely duration of the litigation

Rule 23(e)(2)(C)(i), and the second and fourth *Reed* factor, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation. This factor requires a court to determine whether the settlement falls within "a

---

[3] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv), and since Notice has not yet been sent, the opinion of the Class (*Reed* factor #6) cannot be evaluated yet.

reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010), quoting *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007).

Here, the litigation would be even more lengthy and expensive if this Action were to proceed further. Plaintiffs faced significant risks. Plaintiffs and Reliance Trust had vastly different views about Reliance Trust's actions, its potential liability and the likely outcome of the litigation. Plaintiffs' core allegations regarding the RVNB stock purchase rested on facts that were strongly contested by Reliance Trust, including the accuracy of RVNB's projections, whether the valuation methods employed by Reliance Trust and its advisors were proper, and whether there were negative facts that were ignored by or not sufficiently investigated by Reliance Trust during the due diligence and negotiation process.

Reliance Trust vigorously denied all of the allegations, asserted affirmative defenses and otherwise defended its actions with respect to the purchase. Reliance Trust pointed to evidence which in its view, supported the conclusion that it has no liability. Reliance Trust also retained experts who support such conclusions. If the Action were to proceed through trial, Plaintiffs would have to overcome these defenses and arguments.

Plaintiffs and Reliance Trust also strongly disagree on the proper measure of damages. Reliance Trust contends that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, argued that the Plan incurred significant financial damage through its overpayment for RVNB shares. The Parties have exchanged position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time the Parties reached their Settlement and the uncertainty put both Parties at great risk.

16

These fact intensive inquiries would have led to a battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

Further, the Parties' dispute over Reliance Trust's motion to compel arbitration remained unresolved. The Magistrate Judge recommended that the Court deny the motion. However, Reliance Trust filed lengthy substantive objections to the Magistrate's recommendation, and the Court has not ruled on the objections to the Magistrate's recommendation. Further, even if the Court had accepted the recommendation, Reliance Trust had an immediate right of appeal, meaning that a trial (and judgment) in this case could have been postponed while an appeal was pending. And even if affirmed on appeal, Plaintiffs would still face a trial on the merits, likely followed by an appeal on the merits. In sum, Plaintiffs and the Settlement Class may have waited several years for ultimate resolution and recovery.

Before the Parties reached trial, they would have to expend substantial time and effort to prepare the joint pretrial exhibit list including identification of relevant exhibits and litigating any motions *in limine*. And, regardless of the outcome, there likely would have been appeals that followed, further delaying resolution and causing more expense.

In light of the inherent uncertainty, and potential for delay, a settlement of $6,250,000— approximately $5,000 per participant before fees and other costs are applied—is a good result for the Class. As courts in this Circuit have noted, "in the context of a class action settlement, "compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein*, 705 F. Supp. 2d at 649, *citing Pettway v. Am. Cast Iron Pipe Co*., 576 F.2d 1157, 1214 n.69 (5th Cir. 1978). "Inherent in

compromise is a yielding of absolutes and an abandoning of highest hopes." *Lee v. Metrocare Servs.*, No. 3:13-CV-2349-O, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015) (internal citations omitted).

A certain recovery for the class now, far outweighs the mere possibility of future relief after years of costly litigation. *See Klein,* 705 F. Supp. 2d at 651 ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened."), citing *Ayers,* 358 F.3d at 369; *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT, 2020 WL 256132, at *7 (N.D. Ga. Jan. 13, 2020) (weighing risk in evaluating data breach settlement).

Considering the costs, risks and delay of trial and appeal, the immediate and certain recovery of $6,250,000 outweighs the uncertain possibility of a greater amount in the future, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any judgment to be reduced to actual payment to Plan participants.

### 4.    The stage of the proceedings and the amount of discovery completed

This *Reed* factor requires the Court to evaluate whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Klein*, 705 F. Supp. 2d at 653, *citing Ayers v. Thompson,* 358 F.3d 356, 373 (5th Cir. 2004).

In this case, as described in Section II(B) above, the Parties completed discovery, including expert discovery, and were preparing for trial before they reached a settlement in principle, and therefore had a complete opportunity to test their claims and defenses and understand the strengths and weaknesses of their positions.

### 5.    The effectiveness of the proposed method of distributing relief to the Class

Rule 23(e)(2)(C)(ii), examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the Settlement

18

Agreement contemplates Plaintiffs' Counsel providing the names and last known addresses of members of the Settlement Class, and the number of vested shares of RVNB stock that were allocated to their ESOP account to the Settlement Administrator. Settlement Agmt., ¶¶ 2.1.2, 8.2.2 and Exhibit 4. The Settlement Administrator will use that information, and follow the Plan of Allocation. Settlement Agmt., ¶ 8.2.2 and Exhibit 4. All Class Members will receive a check directly from the Settlement Administrator.

### 6.      The terms of the proposed award of attorneys' fees

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees, including timing of payment. As described above in Section III(C), Plaintiffs' Counsel will file an application seeking an award of attorneys' fees in an amount not exceeding one-third of the Settlement Amount, plus reimbursement of litigation expenses. *Id.*, ¶ 10.1.

### 7.      The proposal treats class members equitably relative to each other

Under Rule 23(e)(2)(D), the court must consider whether the proposal treats class members equitably relative to each other. Under the Plan of Allocation, distributions to the Class Members will be based on the number of vested shares he or she held in the Plan. Following that process, individual Class Members will not receive preferential treatment but instead all will receive *pro rata* distributions based on the number of vested shares in their account and as detailed in the Plan of Allocation.

## C.      The Court Should Approve the Notice Plan and Schedule A Fairness Hearing

As described in Section III(B) above, the Parties have agreed, subject to Court approval, to a Notice Plan, which calls for individual mailed notice to the Settlement Class. This notice and

the manner in which it will be disseminated satisfies Rule 23(e)(1) and constitutional due process concerns.

Plaintiffs' request that the Court approve KCC LLC as Settlement Administrator and Escrow Agent. KCC LLC has extensive experience in the administration of settlements of this type.

Finally, the Parties request that the Court schedule a Fairness Hearing on Plaintiffs' motion for final approval of the Settlement and motion of an award of reasonable attorneys' fees and Service Award to Plaintiffs, as set forth in the proposed Preliminary Approval Order. This will establish a reasonable and efficient process for disseminating notice, providing the opportunity for Class Members to object, and considering final approval of the Settlement.

## V.      CONCLUSION

The proposed settlement meets the standard for preliminary approval. Accordingly, Plaintiffs respectfully requests that the Court issue an Order: (a) grant preliminary approval of the Settlement Agreement, attached to the Porter Declaration as Exhibit A; (b) certify the Settlement Class for settlement purposes, and appoint Plaintiffs as Class Representatives, and Plaintiffs' Counsel as Class Counsel; (c) approve the proposed Class Notice, Exhibit 1 to the Settlement Agreement; (d) appoint KCC as the Settlement Administrator; (e) approve the Plan of Allocation; (f) appoint KCC as Escrow Agent; and (g) set a date for a Fairness Hearing.

The Parties agree to the following schedule of events subject to the Court's approval:

| Event | Timing |
|---|---|
| CAFA Notice | Within 10 days after the Settlement Agreement is filed |
| Preliminary Approval Hearing | TBD |
| Settlement Administrator to receive Class list and Class contact information | At least twenty-one (21) days prior to the deadline for mailing notice |
| Mail Settlement Notice | At least ninety (90) days before the Fairness Hearing |

| Motion for award of attorneys' fees and expenses, service awards for Named Plaintiffs | No later than forty-five (45) days before the Fairness Hearing |
|---|---|
| Objections to the Settlement, notice of intention to appear at Fairness Hearing | Must be received by the Court on or before thirty (30) days before the Fairness Hearing |
| Motion for final approval of settlement | No later than fifteen days before the Fairness Hearing |
| Fairness Hearing | TBD |

## REQUEST AS TO HEARING

The Plaintiffs respectfully request that the Court decide the motion on the papers, or, in the alternative, schedule a telephonic hearing.

Dated: March 13, 2020

BAILEY & GLASSER LLP

*/s/ Gregory Porter*
Gregory Y. Porter (*pro hac vice*)
Ryan T. Jenny (*pro hac vice*)
Patrick O. Muench (*pro hac vice*)
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
(202) 463-2101
(202) 463-2103 (Fax)
gporter@baileyglasser.com
rjenny@baileyglasser.com
pmuench@baileyglasser.com

Thomas R. Ajamie
Texas Bar No. 00952400
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
(713) 860-1600
(713) 860-1699 (Fax)
tajamie@ajamie.com
jedwards@ajamie.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 13, 2020, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Gregory Porter*
Gregory Porter
