**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **JESSICA CASEY and JASON COLEMAN, on behalf of the RVNB Holdings, Inc. Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,**<br><br>          **Plaintiffs,**<br><br>**v.**<br><br>**RELIANCE TRUST COMPANY, a Georgia corporation,**<br><br>          **Defendant.** | **Case No. 4:18-cv-000424-ALM** |

<u>**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 2

    A.    Background .......................................................................................... 2

    B.    Discovery ............................................................................................ 3

    C.    Motions Practice ................................................................................. 3

    D.    The Parties' Settlement Efforts ........................................................... 4

    E.    Key Terms of the Settlement .............................................................. 4

    F.    Notice Reached Over 89% Of The Class; There Are No Objections .................... 5

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED ........................................................................... 6

    A.    The Settlement Class is adequately represented, negotiations were at arm's length, and there is no suggestion of collusion. ...................................................... 8

    B.    The relief obtained is substantial, especially considering the complexity, expense, and likely duration of the litigation, and the probability of success. ..... 10

    C.    The factual record was well developed through discovery and the litigation was sufficiently advanced. .................................................................................. 13

    D.    The proposed method of distributing relief to the Class is highly effective; Settlement benefits are automatic. ................................................................. 13

    E.    The terms of the proposed award of attorneys' fees. ........................................... 14

    F.    The proposal treats Class Members equitably relative to each other.................... 14

    G.    The opinions of Class Counsel, Class Representatives, and absent Class Members. .......................................................................................................... 14

IV.    THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES.. 15

V.    CONCLUSION......................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
No. 4:17-CV-3852, 2019 WL 387409 (S.D. Tex. Jan. 30, 2019)............................................7

*DeHoyos v. Allstate Corp.*,
240 F.R.D. 269 (W.D. Tex. 2007) ....................................................................................6, 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2800, 2020 WL 256132 (N.D. Ga. Jan. 13, 2020) ............................................13

*Hale v. State Farm Mut. Automobile Ins. Co.*,
No. 12-0660, 2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) ...................................................14

*Hays v. Eaton Grp. Attorneys, LLC*,
No. CV 17-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ...................................................13

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..........................................................................6, 8, 9

*Horton v. Goose Creek Indep. Sch. Dist.*,
690 F.2d 470 (5th Cir. 1982) .................................................................................................8

*Klein v. O'Neal, Inc.*,
705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................................................ *passim*

*Lee v. Metrocare Servs.*,
No. 3:13-CV-2349, 2015 WL 13729679 (N.D. Tex. July 1, 2015)........................................12

*ODonnell v. Harris County, Texas*,
No. H-16-1414, 2019 WL 4224040, - 10 (S.D. Tex. Sept. 5, 2019) ..................................9, 10

*ODonnell v. Harris County, Texas*,
No. H-16-1414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ....................................8, 9, 14

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ....................................................................................... *passim*

*Smith v. Krispy Kreme Doughnut Corp.*,
No. 05-cv-187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007)................................................10

*Stirman v. Exxon Corp.*,
280 F.3d 554 (5th Cir. 2002) ................................................................................................8

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ..........................................................................6

*United States v. City of Miami, Fla.*,
    614 F.2d 1322 (5th Cir. 1980) ........................................................................6

*Vaughn v. Am. Honda Motor Co.*,
    627 F. Supp. 2d 738 (E.D. Tex. 2007)............................................................6

**Statutes**

29 U.S.C. § 1001, *et seq.*............................................................................ *passim*

29 U.S.C. § 1106 ....................................................................................................2

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................8

Fed. R. Civ. P. 23(a) .............................................................................................15

Fed. R. Civ. P. 23(b)(1) ........................................................................................15

Fed. R. Civ. P. 23(b)(1)(A) ...................................................................................15

Fed. R. Civ. P. 23(b)(1)(B) ...................................................................................15

Fed. R. Civ. P. 23(e) ...........................................................................................6, 7

Fed. R. Civ. P. 23(e)(1) .......................................................................................1, 5

Fed. R. Civ. P. 23(e)(2) .......................................................................................6, 7

Fed. R. Civ. P. 23(e)(2)(A) .....................................................................................8

Fed. R. Civ. P. 23(e)(2)(B) .....................................................................................9

Fed. R. Civ. P. 23(e)(2)(C)(i) ................................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(ii) ...............................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ..............................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ................................................................................8

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................14

Fed. R. Civ. P. 23(e)(3) ...........................................................................................7

**Other Authorities**

*Manual for Complex Litig.* (Fourth) (2004)........................................................................13

# I.      INTRODUCTION

On January 8, 2020, Plaintiffs Jessica Casey and Jason Coleman ("Plaintiffs" or "Named Plaintiffs") and Defendant Reliance Trust Company ("Reliance Trust") reached a settlement that fully resolves this ERISA class action. ECF No. 156-1, at 2 - 21. Under the Settlement, Reliance Trust will make a cash payment of $6,250,000, which will be used to make *pro rata* payments to every eligible Class Member, and to pay attorneys' fees and expenses, costs of notice and administration, and Named Plaintiffs' Case Contribution Awards, all subject to Court approval.[1] Class Members are not required to submit claims to obtain the benefits of the Settlement.

All the relevant factors that support approval are met here. The Settlement provides significant relief and constitutes an excellent result for the Class, particularly given the risk and expense of continued litigation. On average, each Settlement Class Member will receive approximately $5,300, before Court-approved deductions, well above the range for similar cases. The Settlement ensures that Settlement Class Members are compensated without delay and eliminates the risk of loss at trial or on appeal. Before settlement discussions, the Parties were fully apprised of the strengths and weaknesses of their respective claims and defenses, having completed comprehensive discovery, briefed substantive and dispositive motions, and begun preparing for trial. The Settlement was negotiated at arm's length, with the assistance of an experienced ERISA class action mediator, Robert A. Meyer, of JAMS New York.

The Court granted Plaintiffs' motion for preliminary approval and approved class notice on April 22, 2020. ECF Nos. 157, 159. The Parties have fulfilled all their obligations under that Order. Plaintiffs now ask the Court to: (1) grant final approval of the Settlement Agreement; (2) find that the Class Notice satisfies the requirements of due process and Fed. R. Civ. P.

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as in the Settlement Agreement. ECF No. 156-1.

23(e)(1); (3) find that the Settlement Agreement is fair, reasonable, and adequate; (4) finally certify the class for settlement purposes; (5) dismiss on the merits and with prejudice all claims asserted against Reliance Trust; (6) retain jurisdiction of all matters related to the interpretation, administration, implementation, effectuation, and enforcement of the Settlement Agreement; (7) award Plaintiffs' counsel attorneys' fees and expenses in accordance with their separately filed application for attorneys' fees; and (8) award a Case Contribution Award of $25,000 each to the Named Plaintiffs.

An updated proposed Final Judgment and Order Approving Class Settlement and Dismissal With Prejudice is attached as Exhibit 1.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Background

This class action was brought on June 15, 2018, on behalf of participants and beneficiaries of the RVNB Holdings, Inc. Employee Stock Ownership Plan ("Plan"). ECF No. 1 (Complaint); ECF No. 35 (Amended Complaint). The Amended Complaint alleges that Defendant and plan trustee Reliance Trust violated ERISA in connection with the Plan's purchase of 520,000 shares of RVNB Holdings, Inc. ("RVNB") on December 17, 2012, for $85 million (the "ESOP Transaction"). ECF No. 35, ¶¶ 82–102.

Plaintiffs alleged that Reliance Trust engaged in a prohibited transaction as defined by ERISA § 406, 29 U.S.C. § 1106, when it, *inter alia*, caused the Plan to purchase the shares of RVNB stock, caused the Plan to borrow money from RVNB for that purchase, acted for the benefit of RVNB and its shareholders who sold or redeemed their shares prior to the ESOP Transaction by approving a purchase price for the stock that was more than its fair market value, and received payment from RVNB for serving as trustee on behalf of the Plan. ECF No. 35, ¶¶ 86–90, 100.

Reliance Trust denies these allegations and denies any wrongdoing or liability of any kind regarding the ESOP Transaction or this Action.

**B.      Discovery**

Before mediation, the Parties completed wide-ranging, comprehensive fact discovery and expert discovery. Plaintiffs reviewed over 5,500 documents, totaling 55,846 pages, which were produced by Reliance Trust, AMS Group Holdco, LLC, ("AMS"), a successor in interest to RVNB Holdings, Inc., and Stout Risius Ross, LLC ("Stout"), a third-party valuation firm for the ESOP. Plaintiffs also deposed seven fact witnesses: Nick Bouras (former CFO of RVNB), Vasilia Peterson (RVNB director and selling shareholder), Bucky Wright (member of Reliance's Trust Committee), Matthew Hricko (analyst for Stout), Steve Martin (member of Reliance's Trust Committee), Spero Georgedakis (owner of certain All My Sons franchise locations rolled into RVNB prior to the ESOP Transaction), and Jeffrey Buettner (director at Stout). Defendants deposed Plaintiffs Jason Coleman and Jessica Casey. Declaration of Gregory Y. Porter, ECF No. 165-1 ("Porter Decl."), ¶ 18.

Plaintiffs retained three experts: Daniel Van Vleet on valuation and damages to the ESOP; Ronald Milewski on the financial metrics of moving and storage companies; and Charles Goldman on the elements of due diligence necessary for a corporate acquisition. *Id.* All three experts produced reports and were deposed by Reliance Trust. *Id.* Defendant engaged two experts, Jeffrey Tarbell and Colin Henderson, who similarly produced reports and were deposed by Plaintiffs. *Id.*

**C.      Motions Practice**

The Parties engaged in extensive motions practice on key substantive issues, including: Reliance Trust's Motion to Transfer Venue, ECF No. 13; Reliance Trust's Motion to Compel Arbitration, ECF No. 44; Plaintiffs' Motion for Class Certification, ECF No. 50; Plaintiffs'

Motion to Compel Discovery, ECF No. 106; Motions *in Limine* to Exclude Expert Testimony, ECF Nos. 116, 119, 120, 121; Defendant's Motion for Partial Summary Judgment, ECF No. 140; and Plaintiffs' Motion for Partial Summary Judgment, ECF No. 143. A description of these and other motions is contained in Plaintiffs' Motion for Award of Attorneys' Fees, ECF No. 165, at 2 - 4. When the Settlement was reached, Plaintiffs' motion for class certification, the Parties' motions for summary judgment, and Reliance Trust's objections to the Magistrate's recommendation on the motion to compel arbitration were pending, and the Parties were preparing for trial.

### D. The Parties' Settlement Efforts

The Parties attended a full-day mediation with Robert A. Meyer, Esq., of JAMS on January 8, 2020, in New York City.

Before the mediation, both Parties submitted comprehensive mediation statements to Mr. Meyer that focused on each of the key issues. Both Parties' counsel made presentations to Mr. Meyer at the mediation, and then vigorously engaged in the mediation process. After much deliberation, discussion, and compromise, Mr. Meyer made a mediator's proposal in the amount of $6.25 million, which the Parties accepted. Porter Decl., ¶ 19.

### E. Key Terms of the Settlement

Each of the material terms of the Settlement Agreement are summarized in Plaintiffs' Motion for Preliminary Approval, ECF No. 155, at 3 - 6. In brief, Reliance Trust has agreed to pay $6.25 million ("Settlement Amount") into the Settlement Fund to resolve this case. ECF No. 156-1, ¶ 7.1.2. The funds remaining after deduction from the Settlement Amount for (i) taxes (or reserves to pay taxes), (ii) settlement administration fees, (iii) Court-approved attorneys' fees and expenses, and (iv) any Case Contribution Awards to the Class Representatives, shall constitute the "Net Settlement Fund." The Net Settlement Fund will be distributed to the Class Members on

a *pro rata* basis under the Plan of Allocation. *Id.* at 48–49.

The proposed Settlement Class is defined as: all persons who were participants in RVNB Holdings, Inc. Employee Stock Ownership Plan at any time and who vested in RVNB Holdings, Inc. stock. Excluded from the Settlement Class are Robert Peterson, Jr., Vasilia Peterson, Paul Generale, and Mike Paxton. ECF No. 159, ¶ 5; ECF No. 162.

### F.    Notice Reached Over 89% Of The Class; There Are No Objections

Class members are entitled to notice of any proposed settlement and an opportunity to object before it is finally approved by the court. For this reason, Rule 23(e)(1) requires that when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Here, the Notice Plan approved by the Court was implemented by the Parties. On May 6, 2020, Settlement Administrator KCC mailed the Class Notice to all 1,179 Settlement Class Members, as required by the Settlement Agreement. ECF No. 156-1, ¶ 2.1.2; Declaration of Julie Swanson of KCC, attached as Exhibit 2, ("Swanson Decl.") ¶¶ 3–4. As of July 22, 2020, 238 Class Notices for 166 Class Members were returned by the United States Postal Service as undeliverable. Notices for some Class Members were returned more than once. Eighty-seven Notices, representing 87 Class Members, have been re-mailed based on updated addresses obtained through searches performed by KCC. *Id.* at ¶ 6. As of July 22, 2020, Notices mailed to 1,055 Class Members (representing approximately 89% of the Class) have not been returned as undeliverable and Notices to 124 Class Members were undeliverable and an updated address was not found. The Class Notice, attached to the Swanson Declaration as Exhibit A, is clear and straightforward, and provided Class Members with sufficient information to inform them about the nature of the Action, the terms of the Settlement, and the procedures for entering an appearance to be heard or to object to the Settlement. *Id.,* Exhibit A. The Class reaction to the Settlement has been positive. As of July

16, 2020, no objections have been received. *Id.* at ¶ 9.

KCC also established a settlement website with detailed information about the Settlement. *Id.* ¶ 8. The website address—www.CaseySettlement.com—was printed on all Notices. *Id.* The settlement website provides links to key documents, lists important dates and deadlines, and provides the contact information for KCC and Class Counsel. *Id.*

If the Court approves the Settlement, the Settlement Administrator will implement the Plan of Allocation, make payments to Settlement Class Members from the Net Settlement Fund. The Settlement Administrator's fees and expenses are currently estimated to be approximately $60,000.

The Settlement Administrator is also serving as Escrow Agent, and has established and is maintaining a qualified settlement trust to hold the Gross Settlement Fund and Net Settlement Fund. *Id.* at ¶ 10.

### III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

Courts favor class action settlements. *See Vaughn v. Am. Honda Motor Co*., 627 F. Supp. 2d 738, 746 (E.D. Tex. 2007); *United States v. City of Miami, Fla*., 614 F.2d 1322, 1332 (5th Cir. 1980). There is a strong presumption in favor of fairness when a class settlement is "'reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012), quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010) ("strong presumption" in favor of settlement); *DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 286 (W.D. Tex. 2007).

Rule 23(e) provides that to be approved, a settlement must be fair, adequate, and

reasonable. Rule 23(e)(2); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. 4:17-CV-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019).

The 2018 Amendments to Rule 23(e) direct courts to determine if a settlement is fair, reasonable, and adequate. It provides that courts should consider whether:

> (A)    the class representatives and counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment;[2] and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Prior to the 2018 amendments, the Fifth Circuit traditionally evaluated class action settlements using the six factors outlined in *Reed v. Gen. Motors Corp.* (the *Reed* factors):

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983) (citation omitted); *see also*

---

[2] Class Counsel addressed the reasonableness of their requested attorneys' fees and expenses in their separately filed fee application. ECF No. 165.

*Klein.,* 705 F. Supp. 2d at 649.

Plaintiffs will address each of these factors to the extent they are applicable, many of which overlap.[3] *See ODonnell v. Harris County, Texas*, No. H-16-1414, 2019 WL 6219933, at *9 (S.D. Tex. Nov. 21, 2019) (because the Rule 23 and *Reed* factors overlap, "courts in this circuit often combine them in analyzing class settlements").

Ultimately the decision whether to approve the settlement involves a balance. "A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances." *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063; *see also Klein,* 705 F. Supp. 2d at 650 (when considering approval, a court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial") (internal quotation marks omitted).

### A.     The Settlement Class is adequately represented, negotiations were at arm's length, and there is no suggestion of collusion.

Rule 23(e)(2)(A) requires adequate representation by Plaintiffs and their counsel. The Fifth Circuit has held the adequacy inquiry requires the court to consider: "[1] the zeal and competence of the representative[s'] counsel and ... [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]" *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002), citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001), and *Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470, 484 (5th Cir. 1982). Each of these requirements is met here.

Both Ms. Casey and Mr. Coleman have been exemplary class representatives. They have been actively engaged in the litigation. They provided documents to counsel used to draft the

---

[3] There is no agreement required to be produced under Rule 23(e)(2)(C)(iv).

complaint. Porter Decl., ¶ 37. They prepared for and sat for their depositions; they conferred

regularly with counsel on the progress of the case, including settlement. *Id.* They were prepared

to testify at trial. They have no conflicts with the class, and assert no claims for individual relief.

They obtained an excellent result for the Class, a result that would not be possible without them.

They have diligently and zealously represented the Class.

Plaintiffs' Counsel have and will continue to adequately represent the Class. They are

well-qualified and experienced as described in detail in Porter Declaration in support of motion

for an award of attorneys' fees, ECF No. 165-1, ¶¶ 8 - 14. Not only do these attorneys have

extensive experience litigating ERISA class actions, including numerous ESOP cases, they have

worked diligently to litigate the claims here. *Id.* ¶¶ 16 - 19. They have brought more than

sufficient skill and resources to litigate this case, as also described in their previously filed

Motion for Award of Attorneys' Fees, ECF No. 165, at 14 - 15.

In addition, and in satisfaction of Rule 23(e)(2)(B), the Parties' negotiations were arm's

length, hard fought, and at times contentious, conducted with the assistance of a professional

class action mediator, experienced in the legal issues and nuances of ERISA class actions. *See*

Section II(D) above, Porter Decl., at ¶ 19. As above, there is typically a presumption of fairness

that a settlement is fair and reasonable when it is the result of arm's length negotiations between

experienced counsel. *In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1063 (citations omitted).

The arm's length nature of the negotiations, and the vigorous litigation of the Action, also

establish a lack of collusion, the first *Reed* factor. *ODonnell v. Harris County, Texas*, No. H-16-

1414, 2019 WL 4224040, at *9 - 10 (S.D. Tex. Sept. 5, 2019). As the court observed in

*ODonnell*, there is no suggestion of fraud or collusion in a case, like this one, where "[t]he

proposed class settlement was the product of rigorous, hard-fought negotiations conducted at

arm's-length." *Id*. Thus, the court may "presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary." *Id*. (*citing Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)).

**B.      The relief obtained is substantial, especially considering the complexity, expense, and likely duration of the litigation, and the probability of success.**

Rule 23(e)(2)(C)(i), and the second, fourth, and fifth *Reed* factors, require the court to consider the adequacy of the relief obtained, in light of the risk, complexity, cost, and likely duration of the litigation. These factors require a court to determine whether, in light of the risks and costs, the settlement falls within "a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Id.* at 656 (quoting *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 849 (E.D. La. 2007)). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein,* 705 F. Supp. 2d at 651.

***Complexity and Risk.*** As described in Plaintiffs' Motion for Award of Attorneys' Fees, "ERISA law is highly complex," *Smith v. Krispy Kreme Doughnut Corp*., No. 05-cv-187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007), and this case is no exception. ECF No. 165 at 13 – 14. Plaintiffs' core liability allegations about the propriety of the RVNB stock purchase rested on facts that were contested by Reliance Trust. These facts included the accuracy of RVNB's projections, whether the valuation methods employed by Reliance Trust and its advisors were proper, and whether there were negative facts that were ignored by or not sufficiently investigated by Reliance Trust during the due diligence and negotiation process.

Reliance Trust vigorously denied all of the allegations, asserted affirmative defenses, and otherwise defended its actions with respect to the purchase. It pointed to evidence that it contended supported the conclusion that it has no liability at all, and retained experts who

supported such conclusions as well.

Regarding damages, Reliance Trust contended that the Plan and its participants were not harmed at all. Plaintiffs, on the other hand, argued that the Plan incurred significant financial damage by overpaying for RVNB shares by approximately $42.5 million. Porter Decl. ¶ 20. The Parties have exchanged position papers supporting their differing views of what a proper measure of damages should be and presented their theories extensively in the mediation. That core dispute had not been resolved at the time of the Settlement.

Further, the Parties' dispute over Reliance Trust's motion to compel arbitration remained unresolved. While the Magistrate Judge recommended that the Court deny the motion, Reliance Trust objected to the recommendation, and the Court had not yet ruled on that objection. Even if the Court had accepted the recommendation, Reliance Trust had an immediate right of appeal, meaning that a trial (and judgment) in this case could have been postponed while that appeal was pending. Further, even if the recommendation were affirmed on appeal, Plaintiffs would still face a trial on the merits, likely followed by an appeal on the merits. Thus, Plaintiffs and the Settlement Class could have waited several years for a final resolution and recovery.

***Expense and Delay.*** These issues, among others, show that continuing to litigate this case to verdict would require the investment of even more time and resources by the Parties, beyond the sizeable amounts already expended. Combined, Plaintiffs' counsel have committed over 2,400 hours of time to this case so far, representing approximately $1.3 million in lodestar, and have incurred over $559,000 in expenses, mostly for expert fees. *See* ECF No. 165, Plaintiffs' Motion for Award of Attorneys' Fees, at 20 - 24. Before the Parties reached trial, they would have to expend additional time, effort, and resources to prepare the joint pretrial exhibit list, including identification of relevant exhibits, litigate any motions *in limine*, and otherwise prepare

11

for trial. The contested liability and damages issues would have led to a lengthy and expensive battle of experts and conflicting evidence and testimony, which would have placed the ultimate outcome of the litigation in doubt, because no party could reasonably be certain that its expert or evidence would carry the day.

Even if the case proceeded to trial, no doubt lengthy appeals would follow, which would delay the class receiving any relief for years. And even winning on appeal would not guarantee success.

**_Results Obtained_**. In light of the inherent uncertainty, costs, and potential for delay, a settlement of $6,250,000—approximately $5,300 per Settlement Class Member before fees and other costs are applied—is an excellent result for the Class. This amount represents approximately 15% of Plaintiffs' expert's maximum damages estimate, and it exceeds amounts obtained in similar class actions. *See* Porter Decl., at ¶ 21 (chart containing list of other ERISA class actions and recoveries obtained, with class member average gross recovery ranging from $27 to $2,291). As courts in this Circuit have noted, "in the context of a class action settlement, 'compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial.'" *Klein*, 705 F. Supp. 2d at 649, *quoting Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 n.69 (5th Cir. 1978). "Inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Lee v. Metrocare Servs.*, No. 3:13-CV-2349, 2015 WL 13729679, at *6 (N.D. Tex. July 1, 2015), quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

A certain recovery of $6.25 million for the Class now far outweighs the mere possibility of future relief after years more of very costly litigation, particularly given the amount of time it would take—including trial, post-trial and post-judgment briefing, and appeals—for any

judgment to be reduced to actual payment to Plan participants. *See Klein*, 705 F. Supp. 2d at 651 (reasonableness of settlement is strengthened when ongoing litigation poses risk of high costs of time and money) (citing *Ayers v. Thompson,* 358 F.3d 356, 369 (5th Cir. 2004)); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132, at *7 (N.D. Ga. Jan. 13, 2020) (weighing reasonableness of settlement benefits that are certain and available now against years of litigation and uncertainty).

### C.     The factual record was well developed through discovery and the litigation was sufficiently advanced.

The third *Reed* factor requires the Court to evaluate whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Klein*, 705 F. Supp. 2d at 653 (*citing Ayers v. Thompson,* 358 F.3d at 373). To assess the fairness of a proposed settlement, there must be sufficient information. *Manual for Complex Litig.* (Fourth), § 22.921 (2004); *Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88, 2019 WL 427331, at *10–11 (M.D. La. Feb. 4, 2019).

In this case, as described above in Section II(B) and (C), the Parties completed comprehensive discovery, including expert discovery, briefed substantive and dispositive motions, and were preparing for trial when they reached a settlement in principle. They fully understood the strengths and weaknesses of their positions before they entered into mediation.

### D.     The proposed method of distributing relief to the Class is highly effective; Settlement benefits are automatic.

Rule 23(e)(2)(C)(ii) examines the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims. Here, the proposed method for distributing relief to Settlement Class Members is effective and equitable. Plaintiffs' Counsel has provided the names and last known addresses of members of the Settlement Class, and the number of vested shares of RVNB stock that were allocated to their ESOP account to the

Settlement Administrator. ECF No. 156-1, ¶¶ 2.1.2, 8.2.2. The Settlement Administrator will use

that information and follow the Plan of Allocation. *Id*. ¶ 8.2.2; and Exhibit 4 to Settlement, ECF

No. 156-1, at 48-49. All eligible Class Members will receive a payment directly. *Id.*; *see Hale v.

State Farm Mut. Automobile Ins. Co.,* No. 12-0660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16,

2018) (finding distribution method involving direct payments to class members whose addresses

are known to the parties, plus small number of claim forms for others, to be sufficiently

effective). No claims are required.

### E.    The terms of the proposed award of attorneys' fees.

Rule 23(e)(2)(C)(iii) looks at the terms of any proposed award of attorneys' fees,

including timing of payment. In accordance with the Settlement Agreement, Plaintiffs' Counsel

has filed a separate application for an award of attorneys' fees in an amount not exceeding one-

third of the Settlement Amount, plus reimbursement of litigation expenses, which addresses the

reasonableness of the fees requested. ECF No. 156-1, ¶ 10.1; ECF No. 165.

### F.    The proposal treats Class Members equitably relative to each other.

Rule 23(e)(2)(D) requires that the court consider whether the proposal treats class

members equitably relative to each other. Under the Plan of Allocation, distributions to the Class

Members will be *pro rata*, based on the number of vested shares he or she held in the Plan. No

individual Class Members will receive preferential treatment but instead all will receive

payments in accordance with the same formula contained in the Plan of Allocation.

### G.    The opinions of Class Counsel, Class Representatives, and absent Class Members.

The sixth *Reed* factor considers the opinions of counsel, the plaintiffs, and the class. "The

endorsement of class counsel is entitled to deference, especially in light of class counsel's

significant experience in complex civil litigation and their lengthy opportunity to evaluate the

merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see also ODonnell v. Harris County*, 2019 WL 6219933, at *13 (court must give class counsel's opinion appropriate weight, noting that class counsel tends to be most familiar with the case).

Class Counsel's reasons for support of the Settlement Agreement are detailed in this memorandum and in the Porter Declaration, ECF No. 165-1. Both Plaintiffs also support the Settlement Agreement. *See* Declarations of Named Plaintiffs, attached as Exhibits 3 and 4. And no Class Member objects to the Settlement. Swanson Decl., ¶ 9.

## IV.    THE CLASS IS APPROPRIATELY CERTIFIED FOR SETTLEMENT PURPOSES

The Court conditionally certified the Settlement Class for settlement purposes when it granted preliminary approval of the Settlement. ECF Nos. 159, 162. For the reasons contained in the brief in support of that approval, ECF No. 155 at Section IV(A), and the motion for class certification, ECF No. 50, which have not changed, the Settlement Class meets all requirements of Rules 23(a) and 23(b)(1), and should be finally certified for settlement purposes. The Settlement Class is sufficiently numerous because it includes 1,179 Settlement Class Members, and satisfies commonality because the alleged violations of ERISA based on the purchase of RVNB stock are the same as to all Class Members. The Settlement Class satisfies typicality and adequacy because Plaintiffs' claims arise from the same facts as other Settlement Class Members, and they have no conflict with the Settlement Class. The requirements of Rule 23(b)(1)(A) and (B) are met because prosecuting separate actions would create a risk of inconsistent adjudications, and an individual adjudication would apply to the Plan as a whole.

## V.    CONCLUSION

For the foregoing reasons, the Settlement Agreement should be finally approved. A revised proposed Final Judgment and Order Approving Class Settlement and Dismissal With

Prejudice is attached as Exhibit 1.

Dated: July 22, 2020                              **BAILEY & GLASSER LLP**

                                                  */s/ Gregory Porter*
                                                  Gregory Y. Porter (*pro hac vice*)
                                                  Ryan T. Jenny (*pro hac vice*)
                                                  James L. Kauffman (*pro hac vice*)
                                                  Alexandra L. Serber (*pro hac vice*)
                                                  1055 Thomas Jefferson Street NW, Suite 540
                                                  Washington, DC 20007
                                                  (202) 463-2101
                                                  (202) 463-2103 (Fax)
                                                  gporter@baileyglasser.com
                                                  rjenny@baileyglasser.com
                                                  jkauffman@baileyglasser.com
                                                  aserber@baileyglasser.com

                                                  Thomas R. Ajamie
                                                  Texas Bar No. 00952400
                                                  John S. "Jack" Edwards, Jr.
                                                  Texas Bar No. 24040851
                                                  **AJAMIE LLP**
                                                  Pennzoil Place - South Tower
                                                  711 Louisiana, Suite 2150
                                                  Houston, TX 77002
                                                  (713) 860-1600
                                                  (713) 860-1699 (Fax)
                                                  tajamie@ajamie.com
                                                  jedwards@ajamie.com

                                                  *Attorneys for Plaintiffs Jessica Casey &*
                                                  *Jason Coleman*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 22, 2020, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

*/s/ Gregory Porter*

Gregory Porter